1  STEPHEN J. HIRSCHFELD (SBN 118068)
   shirschfeld@chklawyers.com
2  NATASHA J. BAKER (SBN 226981)
   nbaker@chklawyers.com
3  CURIALE HIRSCHFELD KRAEMER LLP
   727 Sansome Street
4  San Francisco, CA 94111
   Telephone: (415) 835-9000
5  Facsimile: (415) 834-0443

6  Attorneys for Defendant
   RECOLOGY, INC.

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10

11  TEAMSTERS LOCAL 350,              Case No.  4:11-cv-11-04089 DMR

12            Plaintiff,              **DECLARATION OF MARK J.**
                                      **ARSENAULT IN SUPPORT OF**
13  vs.                              **DEFENDANT'S MOTION TO DISMISS**

14  RECOLOGY, INC.                    **Date:**    October 27, 2011
                                      **Time:**    11:00 a.m.
15            Defendant.              **Dept:**    Courtroom 4, 3rd Floor
                                      **Judge:**   Honorable Donna M. Ryu
16
                                      **Complaint Filed:**  August 19, 2011
17

18        I, Mark J. Arsenault, declare:

19        1.      I am the Vice President & Group Manager at Recology.  In this position, I have

20  direct responsibility for supervising Recology San Mateo County, the defendant in this action.  I

21  make this declaration of my own personal knowledge, and if called upon to testify as to the facts

22  contained herein, I would and could testify competently hereto.

23        2.      Attached hereto as **Exhibit A** is a true and correct copy of the August 28, 2008

24  Memorandum of Understanding between Norcal Waste Systems of San Mateo County (now

25  known as Recology San Mateo County) and Sanitary Truck Drivers and Helpers Teamsters Local

26  350 (hereinafter "MOU").

27        3.      Attached hereto as **Exhibit B** is a true and correct copy of the collective

28  bargaining agreement between Recology San Mateo County (formerly known as Norcal Waste

1

CURIALE HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   Systems of San Mateo County) and Sanitary Truck Drivers and Helpers Teamsters Local 350

2   executed by Recology San Mateo County on or about December 26, 2010

3         I declare under penalty of perjury under the laws of the State of California and the United

4   States that the foregoing is true and correct.

5         Executed at _San Carlos_____, California on this _6th_day of September, 2011.

6

7   _____

8                     Mark J. Arsenault
                      Recology

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CURIALE HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DECLARATION OF MARK J. ARSENAULT
CASE NO.: CV 11 0489

# EXHIBIT

# A

# MEMORANDUM OF UNDERSTANDING

BETWEEN

## NORCAL WASTE SYSTEMS OF SAN MATEO COUNTY AND

## SANITARY TRUCK DRIVERS AND HELPERS

## TEAMSTERS LOCAL UNION 350

This Memorandum of Understanding is entered into between Norcal Waste Systems of San Mateo County (Norcal) and Sanitary Truck Drivers and Helpers, Teamsters Local Union 350 (Union) in anticipation of an award to Norcal by South Bayside Waste Management Authority (SBWMA) of a contract for collection services for the collection and disposition of recyclable materials and garbage/trash within the areas for which SBWMA has responsibility. The purpose of the parties in entering into this Memorandum of Understanding is to record in writing their agreement with respect to the labor relations issues affected by such an award and thereby avoid problems or disputes that might otherwise affect the stability and continuity of the services provided for in the event the aforesaid award is made to Norcal.

It is accordingly understood and agreed as follows:

1.       It is recognized that the Union presently represents the employees now performing the work covered by this Memorandum and that they are working under collective bargaining agreement ("Agreement") between the Union and Allied Waste, which expires on October 23, 2008. (Said Agreement is attached hereto as Exhibit "A"). (Employees covered by Agreement are hereinafter referred to as "Bargaining Unit Employees.") The work covered by this Memorandum is coextensive with the work covered by the Agreement covered by the anticipated award, including Drivers, Recycling Collector, Commercial Driver, Route Manager, Utility, Semi-Driver, Helpers and Sweepers, excluding work performed by supervisors, management, office clerical and guards as defined in the National Labor Relations Act. The

parties are in agreement that these classifications, and any additional related classifications hereafter created within the scope of duties covered by the Agreement constitute an appropriate bargaining unit.

2.     In the event Norcal is awarded the franchise for the aforesaid services, it will offer employment to the number of employees currently performing the work it determines it needs, as follows:  Norcal will offer employment according to the seniority lists in effect at the existing provider to employees it needs who are currently employed (which includes employees who are out on workers compensation/disability. See below for procedure) in the above described bargaining unit, who have been on the job for at least 120 days as of Norcal's start-up date. Norcal shall only be required to offer employment to those employees who are fully capable of performing work in their regular classification on the start-up date.  Following the start-up date and continuing for one (1) year thereafter, should any of the existing provider's employees who were not hired by Norcal on the start-up date because they were temporarily disabled, provide medical certification demonstrating that said employee is able to return to active duty in his or her regular classification, Norcal shall return that employee to active duty and displace the least senior employee in his/her regular classification.  Nothing in this paragraph shall require Norcal to employ more persons than it deems are needed. It is also understood no individual shall be hired from any other source prior to one (1) year from the start-up date for work within the above stated work classifications, until all displaced workers holding seniority under the previous provider shall have been offered employment.

3.     In the event Norcal becomes the successor to Allied Waste, Norcal will, upon evidence that the Union continues to represent a majority of such employees in the bargaining

unit hereinbefore described, Norcal will formally recognize the Union as their bargaining representative.

      b)    Such evidence shall consist of a showing that a majority of the employees are members of the Union, and/or have signed cards designating the Union as the signatory's bargaining representative.

      c)    Norcal shall, upon the presentation of such evidence and recognition, enter into and adopt the collective bargaining agreement for the remainder of its term then in effect between the Union and Allied Waste. In the event the most recent collective bargaining agreement covering such employees has expired, the Company shall initially apply and be bound by the terms and conditions of the expired agreement, (with the exception of BFI specific health plans or pension plans) but shall concurrently meet with the Union for the purpose of negotiating in good faith to agree upon a successor agreement, which will be retroactive for wages and economic benefits to the date on which the Company begins operations under its franchise.

    4.    All employees hired in accordance with this Memorandum shall retain their seniority held as of Norcal's start-up date.

Executed this 28TH day of August, 2008, in the County of San Mateo, California.

NORCAL WASTE SYSTEMS
OF SAN MATEO COUNTY

By: _____
Firmwide:86432350.1 016440.2000

DAN DAY

SANITARY DRIVERS AND HELPERS
TEAMSTERS LOCAL UNION 350

By: _____

ROBERT MORALES J.

# EXHIBIT

# B

# COLLECTIVE BARGAINING AGREEMENT

## BETWEEN

## RECOLOGY OF SAN MATEO COUNTY

### AND

## SANITARY TRUCK DRIVERS AND HELPERS UNION LOCAL 350, IBT

**January 1, 2011 – OCTOBER 23, 2013**

# TABLE OF CONTENTS

SECTION 1.      RECOGNITION ...................................................................... 1

SECTION 2.      NON-DISCRIMINATION .......................................................... 1

SECTION 3.      UNION SECURITY ................................................................... 1

SECTION 4.      EMPLOYER'S RESPONSIBILITY ............................................ 2

SECTION 5.      JOB CLASSIFICATION AND WAGE RATES............................. 2

SECTION 6.      GUARANTEED HOURS AND REASSIGNMENT ....................... 3

SECTION 7.      HOURS OF WORK.................................................................. 4

SECTION 8.      PAID HOLIDAYS.................................................................... 5

SECTION 9.      VACATIONS ........................................................................... 6

SECTION 10.     SICK LEAVE .......................................................................... 8

SECTION 11.     MAINTENANCE OF BENEFITS ............................................... 8

SECTION 12.     SUPPLEMENTAL INCOME 401(K) ....................................... 10

SECTION 13.     FUNERAL LEAVE ................................................................ 11

SECTION 14.     UNIFORMS AND EQUIPMENT ............................................. 11

SECTION 15.     NO STRIKES OR LOCKOUTS............................................... 12

SECTION 16.     DISCHARGES AND SUSPENSIONS ...................................... 12

SECTION 17.     SETTLEMENT OF DISPUTES............................................... 12

SECTION 18.     CHECK-OFF SYSTEM, CREDIT UNION, AND PAY............... 13

SECTION 19.     D.R.I.V.E. ............................................................................ 14

SECTION 20.     CASUAL AND EXTRA EMPLOYEES .................................... 14

SECTION 21.     STARTING TIME.................................................................. 15

SECTION 22.     COFFEE BREAKS................................................................. 15

SECTION 23.     SENIORITY AND LAYOFFS ................................................. 15

SECTION 24.     JOB DESCRIPTIONS ............................................................ 16

SECTION 25.     JURY DUTY ......................................................................... 17

SECTION 26.     EXTRA CONTRACT AGREEMENTS...................................... 17

SECTION 27.     SUBSTANCE ABUSE............................................................ 17

SECTION 28.     DRIVER'S LICENSE............................................................. 18

SECTION 29.     EMPLOYEE LOYALTY ......................................................... 18

SECTION 30.     SAVINGS CLAUSE............................................................... 18

SECTION 31.     TERM OF AGREEMENT....................................................... 19

EXHIBIT "A" VACATION SCHEDULE ........................................................ 20

## COLLECTIVE BARGAINING AGREEMENT

THIS AGREEMENT is made and entered into by and between SANITARY TRUCK DRIVERS AND HELPERS UNION, LOCAL 350, an affiliate of International Brotherhood of Teamsters, hereinafter referred to as the "UNION," and RECOLOGY OF SAN MATEO COUNTY, hereinafter referred to as the "EMPLOYER."

### WITNESSETH

It is the intent and purpose of the parties hereto that this Agreement promote and improve the industrial and economic status of the parties, provide orderly collective bargaining relations between the Employers and the Union, and secure a prompt and fair disposition of grievances so as to eliminate interruption of work and interference with the efficient operation of the Employers' business.

## SECTION 1. RECOGNITION

The Employer recognizes the Union as the sole collective bargaining representative for all employees of the Employers working in the classifications hereinafter set forth, except and excluding the directors, office clericals, guards, and supervisors as defined in the National Labor Relations Act.

## SECTION 2. NON-DISCRIMINATION

It is agreed the policy of the Employer and the Union is and shall be that the provisions of this labor agreement between the parties will apply equally to all employees covered hereunder within the meaning of applicable state and federal laws without regard to age, race, creed, color, religion, marital status, physical or mental disability, sexual orientation, sex, political affiliation, ancestry, Vietnam era Veterans and/or national origin. The Employer and the Union agree that no employee shall be subject to unlawful discrimination or harassment on the Basis of any of the foregoing characteristics.

In this agreement, except where the context otherwise requires or where a bonafide occupational qualification or requirement exists, words of masculine or feminine gender also refer to the opposite gender.

## SECTION 3. UNION SECURITY

(a)     It shall be a condition of employment that all employees covered by this Agreement shall apply for Union membership on or after the thirtieth (30th) day following the beginning of their employment or the effective date of this Agreement, whichever is later, and as a condition of continued employment, shall maintain their membership in the Union in good standing. "Union membership" and "membership in good standing" shall mean for purposes of this provision the payment or tender of payment by the employee of the initiation fee and monthly dues uniformly applied by the Union pursuant to its Bylaws. In the event an employee shall not comply with his/her obligation under this provision, the Union shall so notify the individual, providing such information as is required by the National Labor Relations Act in such circumstances, and copy the Employers. Thereafter, if the employee fails to remove his/her

delinquency within such period of time as the Union allows, but not less than ten (10) days, the Union shall so notify the Employers and the Employer shall terminate the employee forthwith.

(b)    The Union may designate an appropriate number of members from the San Mateo Division to be shop stewards. Such persons, so designated, shall be permitted reasonable time to investigate, present, and process grievances on Employer's property within the hours of his/her regular workday provided, however, under no circumstances may such persons, so designated as shop stewards, investigate, present or process any grievances during his regular working hours when his assigned duties require that he be on his/her route, whether as a Driver or a Helper, or in any other capacity for the purpose of collecting customers' garbage/recycle.

The persons so designated as shop stewards shall investigate, present, and process grievances after the completion of his assigned route duties and within his/her eight (8) hour day. In the event such investigation, presentation, or processing shall not be completed within the above specified limitation, they may be continued on succeeding days, subject, however, to the requirement that assigned route duties be completed first.

Nothing contained in this paragraph, relative to the activities of the shop steward, shall entitle him/her to receive compensation while investigating, presenting, and processing grievances, other that the rates of pay stated in Section 5 of this Agreement.

## SECTION 4. EMPLOYER'S RESPONSIBILITY

It is recognized that in addition to other functions and responsibilities, the Employer has and will retain the right and responsibility to direct the operation of the Employer and in this connection, to determine the assignment of all work to employees; to establish work and quality standards; the scheduling of routes and the methods, processes, and means of operation; to select hire, promote, demote, and transfer employees, including the right to make and apply rules and regulations for discipline, efficiency, and safety; to determine the number of hours per day or week that operations shall be carried on; to determine and to select the equipment to be used in the Employer's operations and from time to time, to change or to discontinue the use of any equipment and to select new equipment for its operations, including equipment for new operations. Provided that in exercising any of these enumerated functions management will not do anything which conflicts with or is inconsistent with other terms and conditions of the collective bargaining agreement.

## SECTION 5.  JOB CLASSIFICATION AND WAGE RATES

(a)    All occupations to which employees within the respective bargaining units are or may be assigned are classified into categories listed below. It is understood that the determination and operation of the job classification is the function and responsibility of the Employer and placement of employees in any of the following classifications shall be subject to the requirements of the Employers. Job descriptions for each of the classifications which are covered by this Agreement and which are utilized by the Employer are set forth in Section 23 of this Agreement.

(b)    Each employee will be assigned to a classification, the duties of which he/she is competent to perform and which generally reflects his normal work.

2

|              | 1-1-11<br>$ 1.35 | 1-1-12<br>$ 1.35 | 1-1-13<br>$ 1.70 |
|--------------|------------------|------------------|------------------|
| Helper       | $34.25           | $35.60           | $37.30           |
| Driver/Tag   | $34.88           | $36.23           | $37.93           |
| Driver       | $35.50           | $36.85           | $38.55           |
| Semi-Driver  | $36.91           | $38.26           | $39.96           |

Drivers performing work as Front End Loaders will be paid $.50 per hour more than the Driver rate set forth above.

    (c)    <u>New Hire Addendum</u>

All employees who have not completed six (6) months of employment as of January 1, 2011 will receive 100% of the hourly wage and benefits for their classification from that date forward. All employees hired after January 1, 2011 (except those recalled from the displaced worker list) shall be hired under the following wage percentages which take precedence over any conflicting wage in the Collective Bargaining Agreement.

    1.    Wages - New hires shall work under the applicable percentage in the employee's classification.

| During 1st 90 days of employment | 70% of hourly wage |
|----------------------------------|--------------------|
| During 2nd 90 days of employment | 80% of hourly wage |
| During 3rd 90 days of employment | 90% of hourly wage |

Thereafter, the employee will be paid contract rate.

## SECTION 6. GUARANTEED HOURS AND REASSIGNMENT

    (a)    All regular employees shall be guaranteed forty (40) straight time hours of pay per week, and eight (8) hours per day; provided such employees make themselves fully available for work, each day of the work week, in accordance with their individual seniority, provided further, however, that such guarantees shall not apply to employees with less than one-hundred and twenty (120) days of service to the Employers

    (b)    Upon completion of an employee's assigned route in less than eight (8) hours, the employee must report to their Dispatcher, or Immediate Supervisor before going home. Any employee who is reassigned to perform any additional work (except same day missed pickups) shall be paid time and one-half for all such additional work.

(c)     Any employee who, at the specific direction of the dispatcher, is assigned and performs work in a higher job classification shall receive the wage rate shown in Section 5 (above) for such higher classification for each day on which such work is assigned and performed.

(d)     The Employer agrees that, in the event a Route Manager person is unavailable on a particular route and it becomes necessary that the duties of a Route Manager person be performed on that route, said duties will be performed by persons assigned from the Employers' offices. No Helper or Driver/Tag shall be required or allowed to perform said duties unless he is specifically directed to do so by the company official in charge of Route Manager person. Any Helper or Driver/Tag who is directed to perform said duties shall be paid Route Manager person wages for the actual time spent performing said duties.

## SECTION 7.  HOURS OF WORK

(a)     <u>Straight Time Hours</u>

Forty (40) hours of work per week, and eight (8) hours per day shall constitute the maximum straight time work week, provided that this section shall not be construed as limiting the number of hours of work any employee may perform at overtime wage rates.

(b)     <u>Overtime</u>

All work performed in excess of eight (8) hours in any work day shall be paid for at the overtime rate of one and one-half (1 -1/2) time the straight time rate.

(c)     <u>Saturday and Sunday Work</u>

All work performed on Saturday shall be paid for at the overtime rate of one and one-half (1-1/2) times the straight time rate, and any employees performing Saturday work shall be paid for not less than eight (8) hours.

All work performed on Sunday shall be paid for at the overtime rate of two (2) times the straight time rate and any employee performing Sunday work shall be paid for not less than four (4) hours, in the event an employee works more than four (4) hours he will receive eight (8) hours pay at the double time rate of pay. All work performed after 12 hours in any workday, shall be paid at the overtime rate of two (2) times the straight time rate.

(d)     The regular work week shall be Monday through Friday, inclusive.

(e)     It is agreed that the Employer has the right to require employees to work overtime as needed and that employees may be held over after completion of their regular routes or shifts as needed. Call-out overtime (e.g. Saturday and Sunday overtime) shall be offered in descending order of their seniority to employees who are qualified to perform the work required on the particular route. If the most senior qualified employee declines the offer, the overtime shall he offered to the next most senior qualified employee and so forth until the roster is exhausted; the least senior qualified employee shall be required to accept the call-out overtime assignment. In case of an emergency, the Employer shall have the right to depart from the foregoing seniority

4

procedure and the employee designated to work the call-out overtime shall be required to perform the work.

(f)     The Employer shall maintain seniority rosters of qualified employees and shall rotate overtime on a fair and equal basis.

## SECTION 8. PAID HOLIDAYS

(a)     There shall be, commencing on the effective date of this Agreement. A total of twelve (12) paid holidays during the working year:

| | |
|---|---|
| New Year's Day | Employees Birthday (7 days notice) |
| Martin Luther King's Birthday | Labor Day |
| President's Day | Columbus Day |
| Anniversary Date (7 days notice) | Veteran's Day |
| Memorial Day | Thanksgiving Day |
| July 4th | Christmas Day |

(b)     The total pay for a holiday received by regular employees shall be eight (8) hours straight time pay plus an additional twelve (12) hours pay at straight time pay for any holiday actually worked: provided such employees work the regularly scheduled work day immediately preceding the holiday and the regularly scheduled work day following the holiday, except that the employee shall be excused from the requirement of working the day before and/or the day after if, upon either such day, the employee is absent on a leave of absence approved in writing by the Operations Manager, or his substitute, excused by evidence of a doctor's note, on vacation, on another holiday, or on account of any work related illness or injury sustained on the job or off the job. In any event, the employee must present verification of illness or injury satisfactory to the Employer. Payments for holidays shall be in strict conformity with this subparagraph (b), and all past practices by which employees of the Employer have in the past received payments which vary from the provisions of this subparagraph (b) are hereby abolished.

(c)     With respect to all employees other than regulars, any employee who has acquired seniority and reports for work and is put to work shall be entitled to any paid holiday which occurs during that month if such employee reports for work and is put to work the working days before and after such paid holiday.

(d)     If an employee's birthday and/or anniversary day falls on a regular working day for that employee, the employee will be allowed to stay home as long as the Employer can cover the work with its existing complement of employees. Any employee who desires to take his birthday and/or anniversary day off shall so notify the dispatcher seven (7) days prior to his birthday and/or anniversary day. In the event that more than one employee desires to take the same day off as his birthday and/or anniversary day and the dispatcher is unable to allow all such employees to take the day off, the employee(s) granted the day off shall be selected on the basis of Company seniority; and if the remaining employees still desire to take a day off in lieu of their birthday and/or anniversary day, the dispatcher and each such other employee will select a mutually acceptable alternative date. In that event, the alternate date shall be deemed to be the employee's birthday and/or anniversary day for purposes of payment. If the employee takes his

5

birthday and/or anniversary day off, he shall he paid a total of 8 hours at straight time. If an employee works on his birthday and/or anniversary day (except that in the case where an alternative date is selected as set forth above, the alternate date shall he considered to be the birthday and/or anniversary day), he shall be paid in accordance with paragraph (b) of this Section.

(e)     If any of the above-mentioned holidays falls on Sunday, the following Monday shall be observed as a holiday; if any of the above-mentioned holidays falls on Saturday, the preceding Friday shall be observed as a holiday. When a holiday falls during an employee's vacation period, the employee shall be paid 8 straight time hours for the holiday in addition to his vacation pay for that day.

(f)     Notwithstanding the foregoing, there shall be no pyramiding of pay for holiday work.

(g)     All holiday work is assigned by seniority, provided at least one (1) employee on the crew has knowledge of the route.

## SECTION 9. VACATIONS

(a)     All regular employees shall be entitled to a paid vacation following each year of continuous employment to be taken at a time agreeable to their Employers. They shall be entitled to paid vacations as follows: one (1) week after one (1) year of continuous employment; two (2) weeks after two (2) years of continuous employment; three (3) weeks after five (5) years of continuous employment; four (4) weeks after ten (10) years of continuous employment; five (5) weeks after fifteen (15) years of continuous employment; six (6) weeks after twenty (20) years of continuous employment; seven (7) weeks after twenty-five (25) years of continuous employments; and 8 weeks after thirty (30) years of continuous employment Time off as a result of an industrial injury shall be credited as time worked for purposes of this section.

(b)     All vacations shall be subject to the qualifying requirements of the Company.

(c)     Employees shall be required during December of each year to sign up for their vacation dates for the coming year in accordance with the following procedures:

(i)     During the first week of December the Employer shall notify all employees that the vacation sign-up will occur during the last two (2) weeks in December. Employees may sign up for vacation through a written proxy. The employee's vacation will be recorded at the time he/she would normally sign per seniority. In the event that any weeks are unavailable, the employee will be allowed to sign in person per part (iv).

(ii)     During the last two weeks in December, the Employer will assign a date for each employee to meet with the Dispatcher for the purpose of signing up for the employee's vacation preferences. The date for meeting with the Dispatcher shall be assigned on the basis of departmental seniority, with the employee in the department having the most Company seniority being given the opportunity to sign up first, and so forth.

(iii)    Any employee who fails to show up on the date assigned will be allowed to sign up for a later date, but will not be entitled to bump other employees who signed up timely. In such event, the Employers shall attempt to accommodate the employee's first choice of vacation dates, but the Employer retains the sole discretion to require the employee to choose from other available dates.

(iv)    The Employer guarantees that if an employee is sick or otherwise off work at the time he is supposed to sign up for his vacation, the Employers will allow the employee to sign up at the time such employee returns to work

(v)    An employee who has already signed up may change his prior choice of vacation dates, but only after consulting with his Employer and reaching a mutually satisfactory agreement. The Employer, insofar as is practicable, will grant employees vacation on the dates selected by the employees. The Company shall post the vacation schedule with the names of employees within two (2) weeks after the vacation bid closes. The Company will also post open weeks as they occur. The Company shall repost the vacation roster in April of each calendar year which shall include changes/updates that have occurred.

It is also agreed that employees will have the option to work their vacations and receive pay in lieu of time off. If an employee desires to exercise said option, he must communicate his desire during the sign-up in December of the year preceding the vacation year. Once the employee has decided to cash out excess vacation, said vacation checks shall be issued during the month of February.

The Employer shall pay employees who have unused vacation pay during the second pay period of December of each contract year.

(vi)    In the administration of the provisions of these vacation scheduling procedures, there shall be absolutely no bumping of employees already signed up, regardless of seniority, unless agreed to by the employees involved in the individual change being requested.

(vii)    Exhibit "A" to this Agreement shows the number of employees of each Employer by classifications that will be allowed to go on vacation on each week of the calendar year.

(d)    If upon termination, an employee has completed less than a full year of continuous service from his last anniversary, the employee shall be paid pro rata his accumulated vacation based on the number of months worked since his last anniversary.

(e)    Employees' shall be allowed to take all of their vacation at one time.

(f)    All employees who retire during any month of the year shall be entitled to receive their full vacation pay in the event that such employee did not take their vacation-time allowance off during the same year.

**SECTION 10.        SICK LEAVE**

(a)       Effective January 1, 2011 each regular employee shall be entitled to take up to twelve (12) days paid sick leave per year. As used herein, the term year means a period from January 1 to December 31 during the life of this Agreement. The same shall apply in year 2012, 2013.

(b)       An employee shall be entitled to receive pay for a sick day commencing with the first day of each illness.

(c)       On the first payday following December 24, of each year each employee shall receive a day's pay for each unused day of sick leave. Said pay shall be at the wage rate that was in effect during the period in which the unused sick leave was earned.

(d)       There shall be no accumulation of sick leave from year to year.

(e)       Personal Days

Each employee may take up to five (5) days per contract year of unpaid personal days provided the employer has been given twenty four hours notice for each personal day or days off and the employee has received his supervisor's approval.  No more than three (3) employees shall be absent at any one time while taking personal days.

**SECTION 11.        MAINTENANCE OF BENEFITS**

(a)       Any employee receiving wages superior to those specifically provided herein shall not suffer loss of any such wages by the signing of this Agreement.

If an employee is off work due to illness or injury on state disability, any benefits, except health and welfare insurance, due him or her under the Collective Bargaining Agreement shall be paid for a maximum of six (6) months. Health and welfare benefits shall continue for a maximum of twelve (12) months. Any employee being paid under workers compensation laws are not subject to these limitations. Benefits to employees being paid under workers compensation laws shall terminate at the conclusion of the workers compensation proceeding. .No employee shall suffer a reduction of his or her hourly wage by the implementation of this Collective Bargaining Agreement.

(b)       <u>Health and Welfare</u>.  The Employer shall provide Teamsters benefit Trust Fund (Plan 1).  The Cost of the Plan, effective January 1, 2011 will be $1,602.00 per month per employee.  In order to provide all eligible employees with a comprehensive health plan, the Employer agrees to maintain and continue group health coverage under the Teamsters Benefit Trust (Plan 1) in effect January 1, 2011.  The Employer shall provide this Plan for the duration of the collective bargaining agreement.  The above plan shall provide the following benefits.

(c)       <u>Vision Care</u>.  The Plan (1) shall include a Vision Care Plan for all eligible employees and their dependents.

8

(d)   <u>Income Protection</u>.  The Plan (1) shall provide a weekly Disability Coverage Plan for all eligible employees in accordance with the Teamster's Benefit Trust (Plan 1) in effect January 1, 2011.  This Plan, combined with the Supplemental Disability Plan D-17, will entitle eligible employees to a payment in the amount of $60.00 per week for the maximum period of twenty-six weeks.

(e)   <u>Orthodontic Care</u>.   The Plan shall provide Orthodontic Care for all eligible employees and their dependents.

(f)   <u>Additional Dental Benefits</u>.  The Plan (1) shall provide dental benefits under the Teamsters Benefit Trust in effect on January 1, 2011, for all eligible employees and their dependents, which benefits are at the level of ninety percent (90%) of usual, reasonable and customary dental charges.

(g)   <u>Eligible Employees</u>.  An eligible employee is one who receives compensation for eighty (80) or more hours during any month he is employed by the Employer.  The Employer will pay into the Health and Welfare Trust Fund the premium for each employee for any such month commencing on the tenth (10th) day of the month following the effective day of this Agreement.

(h)   <u>Health and Welfare Contributions</u>.  Contributions for each eligible employee shall be paid by the Company on the tenth (10th) day of the month for the preceding month.

(i)   <u>Maintenance of Benefits</u>.  Notwithstanding the foregoing specified amounts, the Employer shall pay the premiums set by Trustees of the Trust Fund to maintain the benefits provided under Teamster's Benefits Trust Fund (Plan 1).

(j)   <u>Early Retirement</u>.   Retirement Security Plan:   In addition to maintaining Teamsters Benefit Trust Health and Welfare Plan 1 in effect, as provided above, effective January 1, 2011, the Employer shall also make such contributions, subject to the procedures stated below, as are necessary to implement the Trust Fund's Retirement Security (RSP) plan, which provides for Health and Welfare benefits for retired employees.  Additional increases in contributions for RSP as may be established by the Trust Fund's trustees during the Term of Agreement and will be paid by the Employer.  The Employer shall provide Teamsters Benefit Trust Retirement Security Health Plan (RSP).  The cost of the Plan, effective January 1, 2011 will be $355.57 per month per employee.

(k)   <u>Pension Plan</u>.  Effective January 1, 2010, the Employer shall pay to the Western Conference of Teamsters Pension Trust Fund on account of each member of the bargaining unit from the first compensable hour.  Contributions shall be made on all straight time hours worked to a monthly maximum of 184 hours per month.

Time paid for but not worked such as holidays, vacation, and sick leave shall be considered as time worked for the purpose of this section.

1.   Effective January 1, 2011, the rate increase shall be as follows, an accrual rate of $4.70 per compensable hour which includes Peer-84.

2.     Effective January 1, 2012, the rate increase shall be as follows, an accrual rate of $5.10 per compensable hour which includes Peer-84.

3.     Effective January 1, 2013, the rate increase shall be as follows, an accrual rate of $5.50. per compensable hour which includes Peer-84.

The contribution required to provide the Program for Enhanced Early Retirement shall not be taken into consideration for benefit accrual purposes under the Plan. The additional contributions for the PEER must at all times by 6.5% of the basic contribution and cannot be decreased or discontinued at any time.

The total amount due for each calendar month shall be remitted in a lump sum not later than ten (10) days after the last business day of each month. The Employer agrees to abide by such rules as may be established by the Trustees of said Trust Fund to facilitate the determination of the hours for which contributions are due, the prompt and orderly collection of such amounts and the accurate reporting and recording of such hours and such amounts of each member of the bargaining unit. Failure to make all payments herein provided for within the time specified shall be a breach of this Agreement.

The parties agree to execute a suitable supplemental Letter of Understanding, consistent with the foregoing employer contribution rate obligations and conforming to language acceptable to the Trustees of the Plan, upon request.

Military Service. The Uniformed Service Employment and Reemployment Rights Act (USERRA) became law on December 12, 1994. The Employer has the following obligations regarding an employee who leaves covered employment to enter military service and thereafter returns to the WCTPTF just as if the employee had continued in covered employment without interruption.

First, if the employee is absent from work for no more than thirty (30) consecutive days because of military service, the Employer is obligated under USERRA to continue making pension contributions to he WCTPTF just as if the employee had continued in covered employment without interruption.

Second, if the employee is absent from covered employment for more than thirty (30) days because of military service and then returns to work for the Employer with his or her USERRA reemployment rights are protected, the Employer is obligated under USERRA to do the following.

The Employer must notify the WCTPTF in writing within thirty (30) days after the employee returns to work.

## SECTION 12.        SUPPLEMENTAL INCOME 401(K)

Effective January 1, 2011 the Employer agrees to recognize all written authorizations from the union members covered by this agreement authorizing deductions from their compensation for contributions to a Supplemental Income 401(k). This Plan will be administered by New York Life at no cost to the Employer. The parties recognize that due to the need to make

10

administrative and payroll changes in order to participate in this Plan, actual participation may be delayed for a reasonable period of time to allow the administrative and payroll changes to be made. The participation in the Plan will be on a voluntary basis, without cost to or matching from the Employer.

## SECTION 13.        FUNERAL LEAVE

In the event of death of an employee's mother, father, mother-in-law, father-in-law, spouse, children, step children, adopted children, sister, or brother, the employee will be granted a leave of absence with pay from the date of death, for a maximum of five (5) days to enable the employee to attend funeral services. The Employer may require proof of death prior to allowance of any benefits under the provisions of this subsection.

## SECTION 14.        UNIFORMS AND EQUIPMENT

(a)      The Company shall supply and maintain, on an as needed basis, but not more than once per calendar year, one standard packing can, with wheels, and dumping handle, for each employee who is required to use one on the route. However, in the event the employee and the company agree that a cart is better for use on the route, the company shall supply and maintain, on an as needed basis, but not more than 4 times per calendar year, one standard cart with wheels and dumping handle, for each employee who is required to use one on the route.

Each employee of the Employers to whom a can or cart is furnished is responsible for any damage to it that is the result of the negligence of the employee. In the event a can is lost or damaged beyond repair, the can must be replaced by the employee at his own expense. Before a replacement can is issued, the employee seeking a replacement at must turn in his old can.

(b)      Rain Gear: The Employers shall furnish each contract year, at Company expense, rain gear when required for route employees, not to exceed one set every year. In the event the rain gear is lost or damaged beyond repair before the expiration of the one-year period, the employee must replace it at his own expense.

(c)      Uniforms: The Employer shall supply the employee with five (5) uniforms per year and the employee shall maintain and launder the uniforms at the employee's expense. Uniforms issued to employees shall be worn during working hours.

(d)      Work Boots: The Employer shall, effective the first month of the calendar year, provide each employee a work boot allowance of a net payment of $250.00 to be used toward the purchase of work boots. Employees must purchase work boots which meet the written safety standards of the Company and it shall be the responsibility of the employee to insure they are wearing proper work boots each day.

(e)      Gloves: The Employer shall supply the employees with twelve (12) pairs of working gloves per year.

(f)      Employees are required to wear their uniforms, company issued Personal Protective Equipment, and work shoes at all times during working hours. Any employee who violates this requirement shall be sent home without pay and shall be subject to discipline.

## SECTION 15.        NO STRIKES OR LOCKOUTS

It is agreed that there shall not be any stoppage of work either by strike or lockout by the Union or the Employers during the life of this Agreement. It shall not be deemed a violation of this Agreement or cause for discharge for any employee to honor any picket line authorized by the Joint Council of Teamsters having jurisdiction in the territory where the picket line is in effect, and no employee shall he discharged or discriminated against for Union activities or upholding Union principles.

## SECTION 16.        DISCHARGES AND SUSPENSIONS

(a)       Employees shall be subject to discharge for dishonesty, intoxication, willful insubordination, grossly negligent performance of duties, competing with Employers, without prior warning or notice. Discipline for other matters such as, but not limited to, habitual tardiness, failure to report for work, neglect of duty, and violation of published company rules and regulations shall require a written warning to the employee and any offense occurring after a written verbal, and two prior warnings and within six (6) months of the last warning shall be grounds for discharge. Discipline for habitual tardiness and failure to report for work shall be tracked separately from all other warning letters for purposes of disciplinary action. Copies of all warnings must be sent to the Union. All warning letters may not be used for disciplinary action if said warning letter is more than six (6) months old. Upon ratification, all warning letters shall be removed.

(b)       Any suspension for more than five (5) days is governed by the same procedure as that required for discharges. A suspension of five (5) days or less may be given without notice but shall not be given without just cause. A notice of suspension of less than five (5) days shall be sent to the Union and shall constitute a written warning within the meaning of subsection (a) hereof.

(c)       Probationary employees are subject to discharge for any reason deemed sufficient in the sole discretion of the Employers.

## SECTION 17.        SETTLEMENT OF DISPUTES

(a)       Disputes: In the event that a dispute arises during the term of this Agreement regarding the interpretation or enforcement of any section of this Agreement, or the terms or provisions of written agreements supplementary to this Agreement, the matter in dispute in all its particulars shall be set forth in writing by the complaining party and served upon the other. If the dispute is not settled by the parties within ten (10) working days following the receipt of such written notice, or within such extended time as may be agreed upon, the dispute shall be referred to the Federal Mediation and Conciliation Service. No change in this Agreement or interpretations resulting from a Federal Mediation and Conciliation Service will be recognized unless agreed to by the Employers and the Union.

(b)       FMCS: If the dispute is not settled by the parties within ten (10) working days following the receipt of such written notice or within such extended time as may be agreed upon, the dispute may be referred to the Federal Mediation and Conciliation Service (FMCS) in accordance with subsection (b) hereof.  Written notices given under this provision may he

12

transmitted by telefacsimile (fax). If the United States Postal Service is used for notice, the postmarked date will be the date upon which service is effective.

(c)     Arbitration: In the event that a resolution of a dispute regarding the interpretation or enforcement of any of the sections of this Agreement, or the terms or provisions of written agreements supplementary hereto, is not reached at the FMCS step, the dispute shall, upon the request either of the Union or the Employers, be submitted to a neutral arbitrator mutually selected and agreed upon, whose decision shall be final and binding.

(d)     Selection of Arbitrator: Unless the parties can otherwise agree upon an arbitrator, a list of arbitrators shall be requested from the Washington. D.C. Office of the Federal Mediation and Conciliation Service. After a toss of a coin to decide which party shall move first, the Employers' representative and the Union representative shall alternatively strike one name from the list until one name remains and such person shall be the arbitrator for the determination of the case. The next to the last name stricken shall be the alternate arbitrator, and so on. The arbitrator shall have no right, power or authority to add to, subtract from, alter, amend or change any term or provision of this Agreement. Discovery procedures as permitted under California Law are permissible.

(e)     Cost of Arbitration: Each party shall hear its own expense in presenting the case to the arbitrator. The expense of the arbitrator and of the reporter, if any, shall be divided between the parties hereto. The Employers agree to pay a sum equal to but not greater than one-half of said expense, and the Union agrees to pay a sum equal to but not greater than one-half of said expense. Each side shall hear its own expense of producing witnesses, experts, interpreters and the like.

(f)     No Interruption of Work: There shall be no interruption of work during the settlement of a dispute.

**SECTION 18.        CHECK-OFF SYSTEM, CREDIT UNION, AND PAY.**

(a)     The Employers agree to recognize all written authorizations from Union members authorizing the deductions for their compensation of all uniformly required dues for the period of authorization which, in any event, shall be irrevocable for a period of one year. The Employers do not agree to deduct initiation fees, assessments or other exactions imposed by the Union unless the expense to the Company is paid by the Union. All deductions made pursuant to this Agreement shall be deducted from the employee's second payroll check of the month and shall be transmitted to the office of the Union by the twenty-eighth (28th) day of the same month. In the event the amount of said deductions is not transmitted to the office of the Union by the 28th day of any month for some reason beyond the Employers' control (for example, the fact that a particular pay period ends on or close to the 28th day), the Employers shall have a reasonable time within which to make said remittance. In no event shall the Employers' failure to make timely remittance be deemed by the Union, for any purpose whatever, to be a default in the timely payment of dues by any Union member.

(b)     The Employers shall make credit union deductions from employee paychecks and transmit the amounts deducted to the employee's credit union upon receipt of authorization and

designation duly executed by the employee; provided, however, that the deduction so authorized is a fixed sum each payday and the amount is not changed by the employee more frequently than once a year.

Employees shall be paid Bi-weekly. Automatic deposit shall be offered to all Employees, with no additional cost to the Employees.

## SECTION 19.          D.R.I.V.E.

(a)     The Employer agrees to deduct from the paycheck of all Employees covered by this Agreement voluntary contributions to D.R.I.V.E. D.R.I.V.E. shall notify the Employer of the amounts designated by each contributing Employee that are to be deducted from his/her paycheck on a Bi-weekly basis for all weeks worked. The phrase "weeks worked" excludes any week other than a week in which the Employee earned a wage. The Employer shall transfer to the D.R.I.V.E. National Headquarters on a monthly basis, in one check, the total amount deducted along with the name of each Employee on whose behalf a deduction is made, the Employee's social security number and the amount deducted from the Employee's paycheck. The International Brotherhood of Teamsters shall reimburse the Employer annually for the Employer's actual cost for the expenses incurred in administering the weekly payroll deduction plan

## SECTION 20.          CASUAL AND EXTRA EMPLOYEES

(a)     The parties recognize that the Employers have a need for casual and/or extra employees to replace employees who are sick, on vacation or who for other reasons do not report for work. Accordingly, the Employers shall establish a pool of persons who are available for such work. A list of such individuals shall be maintained by the Employers, arranged sequentially in accordance with their first day of work, and shall be updated as needed for accuracy.

(b)     Available extra work, including vacation relief shall be assigned by rotation from the list of casuals in the order that such casuals appear on the list. Any route that is open for five business days or more shall be offered to the most senior qualified relief employee who shall remain in this position until the regular employee returns. When a casual completes the assignment, he shall be returned to his place on the casual list for further work assignment. The Union agrees that in the event of emergency, the Employer shall have the right to assign a qualified relief employee to perform the work.

(c)     The Employers shall have the right to eliminate names from the casual list on the basis of unreliability, poor work performance, or for other legitimate reasons. The grievance procedures of this Agreement shall not be available to casuals because they have been eliminated from the list, except as provided in paragraph (d) below.

(d)     New registrants on the casual list shall be considered on probation, and shall not acquire seniority until they have completed one-hundred and twenty (120) days of work (this does not apply to members from the displaced worker list). Upon achieving seniority, a casual shall be entitled to use the grievance procedures of the Agreement. The Guaranteed Hours

14

provision of the Agreement shall be applicable to casuals or extra employees to guarantee that they shall be paid eight (8) hours per day.

(e)    Casuals shall not be used in the manner that deprives regular employees of reassignments under Section 6(b) of this Agreement.

(f)    Vacancies in regular employment shall he filled from casuals who have achieved seniority, in the order that their names appear on the casual list. In the event of layoff of regular employees, they shall have the right to be included at the top of the casual list, in accordance with their seniority. Their recall rights under this Agreement shall remain intact while performing work as casuals. Such laid off regular employees shall receive the full contractual rate of pay while working off the casual list.

## SECTION 21.        STARTING TIME

(a)    Changing of established starting times shall be at the discretion of the Employers, with notice of any such change posted on the bulletin board at least 24 hours in advance. Said posting requirement applies only to general changes in shift starting times and does not apply to changes in individual starting times which may from time to time be required.

## SECTION 22.        COFFEE BREAKS

All employees shall each day be entitled to take two (2) paid coffee breaks of fifteen (15) minutes each. An unpaid lunch break of thirty (30) minutes

## SECTION 23.        SENIORITY AND LAYOFFS

(a)    Application of Seniority:  The provision of this paragraph has no application to an employee who has not been employed for a period of at least one hundred and twenty (120) calendar days.  Following the completion of such one hundred and twenty (120) day period, seniority attaches to an employee as a regular driver or helper.  If the Employer reduces the number of employees due to lack of work, the last employee hired shall be the first laid off, and in the event of rehiring, the last employee laid off shall be the first employee rehired, until all former employees have been rehired.

(b)    Upon attainment of seniority, an individual shall be considered a regular employee.

(c)    Seniority List: The Employers shall maintain master seniority lists of all employees covered by this Agreement and provide the Union with a copy

(d)    The Employers shall not lay off any seniority employee without proper justification.

(e)    Re-Hire Procedure: In the event of a layoff, an employee so laid off shall be restored to duty according to seniority.

(f)     Filling All Positions: Seniority shall be adhered to in filling positions under this Agreement. Employees working other classifications and who bid on a new job posting under the jurisdiction of this Agreement shall be given a thirty (30) day trial on the basis of seniority to qualify for such positions.  Employees working other classifications and who bid on a new job posting shall be given two (2) weeks on the new route to decide whether to accept or reject the new position.  In addition, the parties agree to meet within thirty (30) days to discuss the reason any employee is found not qualified for the new position.

(g)     Vacancies: All jobs and classifications will be subject to a direct bid. Wherever a permanent vacancy occurs, it shall be posted for a period of ten (10) working days, during which interested employees shall be entitled to bid on the vacancy. The Company shall, as it has in the past, allow employees who have been on vacation during the posting period to submit any bid for an additional five working days after the posting period has closed.  At the conclusion of the posting period, the Employers shall award the position to the most qualified bidder with the greatest seniority.

(h)     Job Seniority in Reassignment: Twenty (20) working days in a thirty (30) day period will establish seniority in a classification after a successful bidder has started work on the new route, except that employees assigned to cover temporary assignments such as vacation relief or temporary leaves of absence shall not acquire seniority in the classification to which they are temporarily assigned, no matter how long a period the assignment covers. An employee does not gain seniority in a classification except in the situation where the employee has been permanently assigned as the result of a bid.

When an employee, at his own request is placed in a lower paid classification, he shall be paid at the rate of the lower classification In the event the Employers have to cut down on any of the operations, they will have the right to reassign any employee to a lower classification without being obligated to pay the higher rate of pay. Seniority will be observed in such reassignment.

## SECTION 24.     JOB DESCRIPTIONS

1.     Helper: Collects garbage and refuse on 2-man routes and shuttles truck from house to house, and/or assists in driving-tag duties.

2.     Driver-Tag: Shuttles garbage collection truck from house to house and collects garbage and refuse on 2 man routes; responsible for truck and route: and drives truck to and from dump.

3.     All Driver Classifications:

(a)     Commercial/Garbage: Drives drop-box, rear-loader, side-loader and or bin-truck, on an assigned route as established by management; delivers materials collected to transfer station, processing site or disposal site as directed; are responsible for accurate documentation of general route information including participation rates, route conditions and vehicle data as prescribed by management; other duties as required

(b)     Recycling: Collect all recyclable materials, including yard-waste and organics, either placed at the curb, in an apartment house or combination of the two on an assigned route

16

as established by management; are responsible for accurate documentation of general route information including participation rates, route conditions and vehicle data as prescribed by management; other duties as required.

(c)   Sweeper: Drives street-sweeping equipment on an assigned route as established by management; delivers materials collected to transfer station, processing site or disposal site as directed; are responsible for accurate documentation of general route information including participation rates, route conditions and vehicle data as prescribed by management; other duties as required

4.   Front-End Loader: Drives front-end loader on an assigned route as established by management; delivers materials collected to transfer station, processing site or disposal site as directed; are responsible for accurate documentation of general route information including participation rates, route conditions and vehicle data as prescribed by management; other duties as required

5.   Route Manager: Maintains route services, customer relations and principal revenue collections and rate adjustments on 2-man routes. Has to also be able, when situation requires performing physical work on the route such as driving truck or collecting refuse.

6.   Semi-Driver: Drives long-haul equipment from transfer station to disposal site or processing site as directed; are responsible for accurate documentation of general route information including participation rates, route conditions and vehicle data as prescribed by management; other duties as required. Semi-Drivers must possess a valid Class A CDL.

## SECTION 25.   JURY DUTY

An employee who is required to report to jury duty shall be entitled to leave with pay for a maximum of seven (7) days as a result of such service. For each day of such leave taken, the employee will be compensated by the company at his straight time regular rate for eight (8) hours pay less the amount received by the employee from the Court. An employee who reports for such service and is excused from said service during his regular work shift shall promptly contact the Company and report for work, if the Company requests him to do so. In order to be paid by the Company for such leave, the employee must submit to the Company a work release executed by the Administrator of the Court for each day the employee has served jury duty along with the amount of compensation received for such service.

## SECTION 26.   EXTRA CONTRACT AGREEMENTS

The Employers agree not to enter into any agreement or contract with their employees individually or collectively, which in any way conflicts with the terms and provisions of this Agreement. Any such agreement shall be null and void.

## SECTION 27.   SUBSTANCE ABUSE

The Employer's Substance Abuse Policy provides that employees who test positive pursuant to Department of Transportation guidelines shall receive a three (3) month suspension

and, upon execution of a Return to Work Agreement, be reinstated to their position without loss of seniority.

During the period that the person is suspended, the Employer will pay for COBRA (medical, dental, TAP) coverage provided that the employee has elected to accept COBRA coverage within the required time period.

Until such time as any new contractor takes over the Franchise, the current Substance Abuse Policy is attached hereto as Exhibit "B". The parties reserve their right to re-open for negotiations this policy as law and regulations change.

## SECTION 28.        DRIVER'S LICENSE

(a)      All employees must be in possession of a valid California Drivers License of the proper class needed to perform the employee's job duties.

(b)      Employees who lose their license due to a medical condition will use their best efforts to have the license reinstated. The Employers agree to make all reasonable accommodations, as defined by law, for the employee to continue to work. Any employee working without a license on the effective date of this Agreement shall continue in that capacity, provided the employee makes best efforts to become licensed.

If an employee is unable to obtain his/her license within thirteen (13) months of a suspension, the employee shall be discharged.

(c)      The employees agree to be in compliance with any and all regulations of the U.S. Department of Transportation, California Highway Patrol, and California Department of Transportation regarding hours of work, medical conditions, and required license.

## SECTION 29.        EMPLOYEE LOYALTY

During the employee's employment, the employee shall not engage in competition with the Employers as a sole proprietor, partnership, employee, agent or through any other means. Salvaging while on duty or at Employers' facility or customers of Employers' facility is forbidden. Any employee competing with the Employers is subject to immediate discharge. Competition includes collecting recyclables which have been packaged or left for pick-up for the Employer.

## SECTION 30.        SAVINGS CLAUSE

Should any part hereof or any provisions herein contained be rendered or declared illegal or an unfair labor practice by reason of any existing or subsequently enacted legislation or by a decree of a court of competent jurisdiction or by the decision of any authorized governmental agency, including the National Labor Relations Board, such invalidation of such part or portion of this Agreement shall not invalidate the remaining portions hereof; provided, however, upon such invalidation the parties agree immediately to meet and negotiate substitute provisions for such pans or provisions rendered or declared illegal or an unfair labor practice, the remaining parts or provisions shall remain in frill force and effect.

## SECTION 31.      TERM OF AGREEMENT

This Agreement shall be effective on January 1, 2011, and shall remain in full force and effect to and including October 23, 2013. Thereafter, it shall renew itself for yearly terms beginning with January 1st of each year unless written notice is received by either party from the other party not less than sixty (60) days but not more than ninety (90) days prior to October 23, 2013, or October 23rd of any subsequent year that it is desired to terminate, modify, change or amend the Agreement.

FOR UNION:                                             FOR EMPLOYERS:

SANITARY TRUCK DRIVERS                                 RECOLOGY OF SAN MATEO COUNTY
AND HELPERS UNION LOCAL #350

_____                       _____
Robert Morales                                        Mario Puccinelli
Secretary-Treasurer                                   General Manager

Date:_____12 - 22 - 10_____                    Date:___12-26-10_____

19

**EXHIBIT "A"**
**VACATION SCHEDULE**

GARBAGE, RECYCLE AND FRONT LOAD DEPARTMENTS
18 per week

DEBRIS BOX/STREET SWEEPER DEPARTMENTS
2 per week

TRANSFER DRIVERS
2 per week

The company further proposes that the above schedule showing the maximum number of employees allowed on vacation be modified from time to time as the operations change in the following manner:

For each increase or decrease in the number of employees totaling ten (10) from the date of ratification of this agreement, the number of maximum employees allowed to take vacation shall be increased or decreased by one (1) in the appropriate department.  For example, if we have an increase in the Garbage, Recycling and Frontload Department of 20 employees, we would increase the number of maximum vacation slots from 18 to 20 (addition of 2).  In the event of a loss of 20 employees, the reverse would occur with a change from 18 to 16 (subtraction of 2).

20